J-S78005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.C.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.D.L. | : | |
| | : | |
| Appellant | : | No. 58 WDA 2017 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.L. AND S.L. | : | |

Appeal from the Order November 22, 2016
In the Court of Common Pleas of Warren County Civil Division at No(s):
A.D. 209 of 2010

| | | |
|---|---|---|
| E.C.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| S.D.L. | : | |
| | : | |
| Appellant | : | No. 508 WDA 2017 |

Appeal from the Order March 2, 2017
In the Court of Common Pleas of Warren County Civil Division at No(s):
A.D. 209 of 2010

BEFORE:  OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 13, 2018**

S.D.L. ("Father), who is incarcerated, appeals, *pro se*, the order entered

on November 22, 2016, which denied his petition to remove the guardian *ad*

*litem* ("GAL") of Father's children with E.C.S. ("Mother"), L.D.L., a male born

_____

* Retired Senior Judge assigned to the Superior Court.

in April 2008, and R.S.L., a female born in August 2009 ("the Children"). Father also appeals the order entered on March 2, 2017, which denied his petition for a competency hearing for the Children.[1]  After review, we quash the appeals.

The factual background and procedural history of this appeal are as follows.  On April 5, 2010, Mother filed a complaint for custody of the Children. On May 17, 2010, the trial court entered the recommended order of the custody hearing officer ("CHO"), Attorney Shawn M. Estes, as an interim order.

On March 23, 2011, Father filed a petition for modification of custody. The CHO filed the custody report and recommended order on May 12, 2011. On June 5, 2012, Mother filed a petition for modification of custody.  On July 30, 2012, the trial court directed Mother and Father to undergo evaluations pursuant to 23 Pa.C.S.A. § 5329(c) (regarding driving under the influence offenses and whether they posed a threat to the Children).  On September 19, 2012, the trial court filed its order, adopting the recommended order of the CHO.

On January 7, 2013, Father filed a Motion to Restore Custody, which the trial court deemed a petition for modification of custody.  Father had been convicted of driving under the influence ("DUI") and endangering the welfare

---

[1] D.L. is Father's father ("Paternal Grandfather"), and S.L. is Father's mother ("Paternal Grandmother") (collectively, "Paternal Grandparents" or "Intervenors").

of children in relation to an incident that occurred in August 2012, in which the Children were in his vehicle. On February 12, 2013, the trial court revoked Father's release from prison on bail, and he was incarcerated. On March 5, 2013, the trial court adopted the recommendation of the CHO, and ordered Father to undergo evaluation for the charges for which he was serving time in prison.

On August 13, 2013, Father filed a petition for contempt against Mother. On September 25, 2013, the trial court granted Paternal Grandparents' petition to intervene. On September 25, 2013, the trial court denied Father's contempt petition. The trial court also granted, in part, his motion to restore custody (modification petition), permitting Father telephonic communication with the Children two days per week, permitting Father to have communication regarding the Children's schoolwork, medical records, and other similar documents, and granting Paternal Grandparents an unsupervised visitation with the Children every other weekend.

On April 9, 2014, Father filed a petition for contempt against Mother. On June 3, 2014, the trial court denied Father's petition for contempt.

On February 23, 2015, Mother filed a motion for appointment of a GAL for the Children. On February 23, 2015, Mother also filed a petition to modify custody and a petition for special relief. Mother stated that she and Father shared legal custody of the Children, and she had primary physical custody, while Father had partial physical custody via telephone, twice weekly, from prison, and Paternal Grandparents had unsupervised partial physical custody

every other weekend. In the petition for special relief, Mother asserted that Paternal Grandparents had been taking photographs of the Children while the Children were unclothed. In the petition to modify custody, Mother asserted that Father had been contacting the Children from prison via telephone without following the custody orders. Mother requested primary physical custody for herself and her spouse, L.S. ("Stepfather"), and the suspension of partial physical custody for Father and Paternal Grandparents pending the resolution of the petition to modify.

On February 25, 2015, the trial court granted, in part, Mother's petition; specifically, the trial court awarded Mother temporary primary physical custody of the Children and suspended the partial physical custody of Father and Paternal Grandparents pending the hearing on Mother's petition for special relief.

On March 18, 2015, the trial court granted the motion of Forest-Warren Human Services for a protective order and to quash subpoena pursuant to Pa.R.C.P. 234.4 regarding requests made by Father's then-counsel. Also on March 18, 2015, Father filed a motion for Judge Gregory J. Hammond to recuse himself, as Judge William Morgan had previously heard matters pertaining to the custody matter. On that same date, the trial court, per Judge Hammond, granted the recusal motion. On March 18, 2015, Father filed a motion for video conference and/or petition for writ of *habeas corpus ad testificandum*, seeking to participate from prison in the hearing on Mother's petition for special relief to modify the custody orders and her petition for

appointment of a GAL. On March 19, 2015, the trial court granted Father's request to participate in the hearing via videoconferencing.

On April 7, 2015, Father, acting *pro se*, filed a petition for contempt against Mother regarding reports she made to the Pennsylvania State Police and Forest-Warren Human Services regarding the interaction of Paternal Grandparents and the Children. On April 30, 2015, the CHO filed a recommended order. On that same date, the trial court ordered Stepfather to undergo an evaluation pursuant to 23 Pa.C.S.A. § 5329(c), relating to DUI and drug trafficking, to determine whether he poses a threat to the Children and whether counseling is necessary. On June 4, 2015, Father filed a motion seeking the production of Warren County Children and Youth Services' records regarding the Children. On June 9, 2015, the trial court denied Father's motion, without prejudice. On June 9, 2015, the trial court entered an order dismissing, without prejudice, Father's *pro se* petition for contempt, as Father was represented by Attorney Erika L. Mills at the time that he filed his *pro se* petition.

On June 12, 2015, the trial court entered its order, dated June 8, 2015, that granted the oral motion for appointment of a GAL for the Children made at the time of the hearing on Father's petition for contempt, and appointed Cynthia Klenowski the GAL for the Children.

On June 24, 2015, Attorney Mills filed a petition for writ of *habeas corpus ad testificandum* requesting Father to be present at the hearing scheduled on

Mother's petition for special relief for modification of custody. The trial court granted the petition on July 8, 2015.

On July 9, 2015, Attorney Mills filed a petition for contempt on behalf of Father, seeking to hold Mother in contempt for failing to notify Father of her involvement of police and Children and Youth Services regarding the Children in 2014 and 2015. On July 17, 2015, the trial court entered its order granting Father's contempt petition and holding Mother in contempt. On July 22, 2015, the trial court entered an order dismissing Mother's petition for special relief and modification of custody, and directing that Mother shall permit Father and Paternal Grandparents to have written communication with the Children. The order further directed Mother to ensure that the Children were given the written communications and that they are assisted in reading the communications, and provided that Mother shall not destroy the written communications.

On October 13, 2015, the CHO filed a custody report and recommended order. On November 2, 2015, Father and Paternal Grandparents filed exceptions to the CHO's report and recommended order. On December 23, 2015, the trial court granted Father's and Paternal Grandparents' exceptions, in part, to correct the birthdate of one of the Children provided in the CHO's report. On January 7, 2016, the trial court granted Attorney Mills' motion to withdraw as counsel for Father and Paternal Grandparents. Father and Paternal Grandparents then proceeded *pro se* in this matter.

On January 26, 2016, Paternal Grandparents filed a petition for contempt against Mother, alleging that she withheld written communications from the Children. On February 10, 2016, Father filed a petition for contempt against Mother, alleging that Mother had interfered with the Children's treatment and had not acted in good faith to ensure that the best interests of the Children were protected. On March 4, 2016, Father filed a petition for contempt against Mother, alleging her refusal to accept his telephone calls to the Children. On March 11, 2016, the trial court denied all three contempt petitions, finding no willful and intentional disobedience on the part of Mother.

On July 1, 2016, Paternal Grandparents filed a petition for modification of custody, seeking the reinstatement of their unsupervised visitation with the Children, and making allegations concerning the CHO's recommendations.

On July 12, 2016, the trial court appointed attorney Henry L. Borger as the CHO to replace Attorney Estes, who had recused himself from hearing future matters in this case. On September 19, 2016, the CHO Borger filed his report and recommended order, recommending the matter be scheduled for a hearing. The trial court adopted the recommended order on that same date. On October 21, 2016, Father filed a motion for the transcripts of the hearings conducted on July 15, 2015 and September 17, 2015 before CHO Estes. On October 21, 2016, the trial court denied Father's petition for transcripts.

On November 21, 2016, Father filed a motion to remove the GAL. On November 22, 2016, the trial court denied Father's motion to remove the GAL. On November 29, 2016, Mother filed a petition for modification of custody and

a petition for contempt against Father.  On December 8, 2016, the trial court scheduled the hearing on the modification petitions to occur on January 26, 2017.  On December 14, 2016, Father filed a petition for contempt against Mother, alleging the interference of Mother and Stepfather in his exercise of custody.  The trial court scheduled a hearing on the contempt matter to occur on January 23, 2017.

In the meantime, on December 27, 2016, Father filed an appeal from the November 22, 2016 order which denied Father's request to have the GAL removed.  This appeal was assigned our docket number 58 WDA 2017.[2]  Father filed with his notice of appeal a request for the transcripts of the proceedings conducted on July 15, 1015 and September 17, 2015 before CHO Estes.  On January 17, 2017, the trial court entered an order, dated January 9, 2017, directing Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 905(a) and 1925(a)(2)(i) and (b) within 21 days.

_____

[2] Pennsylvania Rule of Civil Procedure 301 provides that, in general, no order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court.  Pursuant to Pa.R.A.P. 108, an order is not "entered" on the docket until the parties are properly notified under Pa.R.C.P. 236. Because the trial court docket does not include notice of any order being given pursuant to Rule 236*, the appeal is timely.  ***See Frazier v. City of Philadelphia***, 557 Pa. 618, 735 A.2d 113 (1999) (holding that an order is not "filed" until notation is made on the docket that Rule 236 notice has been given.); ***In re L.M.***, 923 A.2d 505, 508-509 (Pa. Super. 2007).  Moreover, we find that his notice of appeal was timely-filed under the prisoner mailbox rule, which Father invoked.  ***See Thomas v. Elash***, 781 A.2d 170, 176 (Pa. Super. 2001).

After a hearing, in an order dated January 23, 2017, and entered on January 24, 2017, the trial court denied Mother's and Father's petitions for contempt.

On January 30, 2017, Father filed a petition for contempt against Mother, again alleging the interference of Mother and Stepfather with his telephone communications with the Children. On February 2, 2017, Father requested an extension of time to file his concise statement with respect to his appeal at 58 WDA 2017. In an order entered on February 3, 2017, the trial court granted an extension until February 28, 2017 for Father to file his concise statement.

On February 3, 2017, CHO Borger filed a recommended order on Paternal Grandparents' petition to modify custody, setting forth that the parties agreed that the October 13, 2015 custody order, confirmed on March 11, 2016, would be modified to provide for counseling for the Children. The order also provided no further action would be taken on Mother's petition to modify filed on November 29, 2016, and it was considered resolved. On February 10, 2017, the trial court confirmed the recommended order.

On February 16, 2017, Father filed a petition for transcripts seeking the transcripts from the contempt hearing held on January 23, 2017, and the custody modification hearing held on January 26, 2017.

On February 24, 2017, Father filed a petition for a competency hearing for the Children. On February 24, 2017, Father also filed a motion for

reconsideration of the contempt order dated January 23, 2017, alleging that the subpoenaed records were inadmissible under the state and federal rules of civil procedure, and that their admission denied him due process.

On February 27, 2017, the trial court confirmed the report of CHO Borger from the January 26 hearing held on the modification petitions. He recommended that the hearing resume on April 25, 2017, and that the October 13, 2015 custody order, as confirmed on March 11, 2016, should serve as an interim order and remain in force and effect until the entry of a final order.

On March 2, 2017, the trial court denied Father's petition for a competency hearing for the Children. On that same date, the trial court denied Father's motion for reconsideration of the contempt order dated January 23, 2017.

On March 2, 2017, Father filed his concise statement with regard to his appeal at docket number 58 WDA 2017.[3] Father also filed a second petition for the previously requested transcripts.

On March 16, 2017, Father filed a notice of appeal from the March 2, 2017 order denying his petition for a competency hearing for the Children,

---

[3] Although the trial court afforded Father an extension of time until February 28, 2017 to file his concise statement at docket number 58 WDA 2017, we find that his concise statement was timely, pursuant to the prisoner mailbox rule. *See Thomas*, *supra*.

which was assigned our docket number 508 WDA 2017.[4] Father did not accompany his notice of appeal with a concise statement, nor did the trial court direct him to file a concise statement. On July 11, 2017, acting *sua sponte*, we consolidated Father's appeals at docket numbers 58 and 508 WDA 2017 and directed Father to file a single brief in the case.[5]

In his brief on appeal, Father raises the following issues:

GROUND 1
Was the appointment of Guardian Ad Litem, Attorney Cynthia K. Klenowski in the best interest of the [C]hildren and all parties in this custody case?

GROUND 2
Was the Guardian Ad Litem appointment terminated upon resolution of the petition on hand as [c]ourt [o]rdered?

GROUND 3
Was the denial by the court to have the Guardian Ad Litem removed prejudicial to [Father] as well as [Paternal Grandparents]?

GROUND 4
Was the lies and false information that was presented to the court prejudicial to [Father]?

_____

[4] On that same date, Father filed a notice of appeal from the March 2, 2017 order denying his petition for reconsideration of the contempt petition, which was assigned our docket number 507 WDA 2017. On June 20, 2017, this Court, acting, *sua sponte*, quashed the appeal as interlocutory. **See Valentine v. Wroten**, 580 A.2d 757 (Pa. Super. 1990).

[5] On April 13, 2017, Father filed a petition for a final order, which included a proposed custody order. On April 24, 2017, the trial court denied the petition for a final order. This procedural history is relevant to Father's request on appeal, **infra**.

- 11 -

GROUND 5
Was [Mother] in violation of State and Federal Law for the illegally obtain[ed] prison phone recording of [Father], and was the court in error for allowing them to be entered into evidence, knowing forehand [*sic*] that they were illegally obtained?

GROUND 6
Did the testimony at the March 3, 2016 [h]earing show beyond doubt that the Guardian Ad Litem, Cynthia Klenowski shows bias and is acting as an [a]dvocate for [Mother]?

GROUND 7
Are the transcripts of the hearing that was held on July 15, 2015 and September 17, 2015 in front of Hearing Officer Shawn Estes being [d]enied because they contain factual proof of argument being presented to this Honorable Court?

GROUND 8
Was the Recommended Order written by Hearing Office Shawn Estes over board [*sic*] to the point that it forced restrictions that are not in normal custody orders? Should [] the custody agreement that [Father] submitted been entertained by the court as well as all parties for the best interest of the [C]hildren?

Father's Brief at 5.[6]

In the conclusion of his brief, Father requests this Court to issue an order removing the GAL and reinstating full, unsupervised visitation for Paternal Grandparents with the Children. Father's Brief at 21. Additionally, Father requests us to direct the parties to review a proposed custody agreement submitted by Father with his petition for final order, and to direct

_____

[6] Moreover, Father has attached to the end of his appellate brief a document captioned "Addition to [Appellant's] Brief", dated October 5, 2017, and requests this Court to consider its contents as new evidence in the custody case. We may not do so, however, as we are constrained to consider only matters that were in the record before the trial court. *See Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*).

- 12 -

the former CHO, Attorney Shawn Estes, to have the recording in his possession from hearings held on July 15, 2015 and September 17, 2015 transcribed and sent to Father. ***Id.***

Before we reach the issues that Father raises in his appeal, we first must ensure that the November 22, 2016 and March 2, 2017 orders are appealable.

In the trial court's opinion, the trial court states that Father's appeal is interlocutory, and requests this Court to quash the appeal, or, alternatively, to affirm the order. The trial court states that, on June 8, 2015, it granted Mother's oral motion for appointment of a GAL for the Children, and appointed Attorney Cynthia D. Klenowski as the GAL. The trial court explains that Father's petition to remove the GAL was based on an allegation that she showed a bias and prejudice against Father in favor of Mother. Father asserts that she was influenced by her husband's (and former law partner's) representation of the Commonwealth in criminal actions against Father. The trial court states that the November 22, 2016 order on appeal is not a final order pursuant to Pa.R.A.P. 301 and 341, nor does it fit into any exceptions under Pa.R.A.P. 311. ***See*** Trial Court Opinion, 4/12/17, at 2. Alternatively, the trial court sets forth its reasoning for rejecting Father's petition to remove the GAL and finding that his arguments supporting the petition lack merit.

"Ordinarily, this Court has jurisdiction only of appeals from final orders." ***D.L.H. v. R.W.L.***, 777 A.2d 1158, 1158 (Pa. Super. 2001). "[A] custody order will be considered final and appealable only if it is both: 1)

- 13 -

entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." ***G.B. v. M.M.B.***, 670 A.2d 714, 720 (Pa. Super. 1996); ***see also*** Pa.R.A.P. 341(b) (defining a final order as one that: (1) disposes of all claims and all parties; (2) is defined as a final order by statute; or (3) is entered as an express final order by the trial court).

> Our Supreme Court has explained:
>
> in addition to an appeal from final orders of the Court of Common Pleas, our rules provide the Superior Court with jurisdiction in the following situations: interlocutory appeals that may be taken as of right, Pa.R.A.P. 311; interlocutory appeals that may be taken by permission, Pa.R.A.P. [312]; appeals that may be taken from a collateral order, Pa.R.A.P. 313; and appeals that may be taken from certain distribution orders by the Orphans' Court Division, Pa.R.A.P. 342.

***Commonwealth v. Garcia***, 43 A.3d 470, 478 n.7 (Pa. 2012) (internal quotations omitted), *quoting* ***McCutcheon v. Phila. Elec. Co.***, 788 A.2d 345, 349 n.6 (Pa. 2002).

Rule 313 of the Pennsylvania Rules of Appellate Procedure define a collateral order as one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." ***In re Bridgeport Fire Litigation***, 51 A.3d 224, 230 n.8 (Pa. Super. 2012); Pa.R.A.P. 313(b). Our Supreme Court has emphasized:

the collateral order doctrine is a specialized, practical [exception to] the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

*Melvin v. Doe*, 836 A.2d 42, 46-47 (Pa. 2003) (internal citations omitted).

Here, the trial court's November 22, 2016 and March 2, 2017 orders are both interlocutory and neither appealable as of right (per Pa.R.A.P. 311), nor did Father ask for or receive permission to appeal the interlocutory orders (per Pa.R.A.P. 312). Further, assuming, without deciding, that the November 22, 2016 and March 2, 2017 orders satisfy the first and third prongs of the collateral order doctrine, the orders cannot constitute collateral orders, as they clearly fail the "importance" prong of the collateral order doctrine. As our Supreme Court has held, for an order to "involve[] a right too important to be denied review," "it is not sufficient that the issue be important to the particular parties. Rather[, the issue] must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Melvin*, 836 A.2d at 47 (internal quotations and citations omitted); *see also Geniviva v. Frisk*, 725 A.2d 1209, 1214 (Pa. 1999) ("[o]nly those claims that involve interests 'deeply rooted in public policy' can be considered 'too important to [be] denied review'") (internal citations omitted). Thus, as the consolidated appeal does not arise from appealable orders, we must quash the appeal.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/13/2018